# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VIDEO SOLUTIONS PTE. LTD., | § § | |
| Plaintiff, | § § | C.A. No. 2:23-cv-00222-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC., | § § § | |
| Defendant. | § | |

**DEFENDANT CISCO SYSTEMS' OPPOSED *DAUBERT* MOTION AND MOTION TO STRIKE THE OPINIONS OF VIDEO SOLUTIONS'S EXPERT DR. ROBERT MANESS**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** ................................................................................................................ | 1 |
| **II.** | **BACKGROUND** ................................................................................................................. | 2 |
| **III.** | **LEGAL STANDARD** ........................................................................................................ | 3 |
| **IV.** | **ARGUMENT** ...................................................................................................................... | 4 |
| | A. Dr. Maness Has Failed To Apportion Damages To Just The Value Of The Allegedly Infringing Features. ................................................................................. | 4 |
| | B. Dr. Maness Should Not Be Permitted To Assert That Non-Webex Products Infringe The Asserted Claims Or Offer An Opinion That Non-Webex Sales Are Attributable To The Asserted Patents. ............................................................ | 6 |
| **V.** | **CONCLUSION** ................................................................................................................... | 8 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..................................................................................................3

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012) .....................................................................................................8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...................................................................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)......................................................................................................4

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) ...............................................................................................1, 4

*San Francisco Baykeeper v. City of Sunnyvale*,
  627 F. Supp. 3d 1085 (N.D. Cal. 2022) .....................................................................................4

*Sims v. Kia Motors of Am., Inc.*,
  839 F.3d 393 (5th Cir. 2016) .....................................................................................................4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)..................................................................................................4

**Rules**

Fed. R. Evid. 702 ..............................................................................................................................3

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION | SHORT CITATION |
|---|---|---|
| 1 | Expert Report of Robert S. Maness, Ph.D., September 26, 2024 (Corrected October 2, 2024) | Maness Rep. |
| 2 | Excerpts from the Deposition Transcript of Robert S. Maness, Ph.D., taken on October 28, 2024 | Maness Tr. |
| 3 | Excerpts from the Corrected Opening Expert Report of Dr. Eric Cole, October 2, 2024 | Cole Rep. |
| 4 | Excerpts from the Deposition Transcript of Dr. Eric B. Cole, taken on October 25, 2024 | 10/25/24 Cole Tr. |
| 5 | Excerpts from the Rebuttal Expert Report of Kevin C. Almeroth, Ph.D. on Non-Infringement of, and Other Technical Opinions Related to U.S. Patent Nos. 8,446,452, 8,446,823, and 9,204,099, October 18, 2024 | Almeroth Rep. |
| 6 | Cisco Webex Presentation, entitled "Webex App Holistic Experience: What makes a good experience," March 2023, bearing production numbers CISCO 00102518 - CISCO 00102538 | n/a |
| 7 | Printed excerpt from ▓▓▓▓▓▓▓ entitled ▓▓▓▓▓▓▓ bearing production number CISCO_00262762 | n/a |
| 8 | PDF of a native Cisco PowerPoint presentation entitled "Cisco Webex Meetings: Technical Decision Makers," bearing production number CISCO_00068226 | n/a |
| 9 | Email from Jeff Barron to Cisco's counsel regarding Cisco's Motions to Strike/Exclude, dated November 4, 2024 | n/a |

**I.      INTRODUCTION**

Cisco respectfully moves to (1) exclude the opinion of Video Solutions' damages expert, Dr. Robert Maness, because he has failed to apportion his damages numbers to reflect only the value of the allegedly infringing features; and (2) strike portions of Dr. Maness' report and exclude opinions about non-Webex products for which no expert has provided any infringement or apportionment analysis.

Dr. Maness's opinion must be excluded because it relies on the (unreliable) technological apportionment analysis of Video Solutions' infringement expert, Dr. Eric Cole. If the Court grants Cisco's motion to exclude Dr. Cole's opinions, it must also exclude Dr. Maness's opinion. Even if the Court does not exclude Dr. Cole's technological apportionment analysis, Dr. Maness's analysis still should be excluded. He has admittedly not attempted to apportion out the value of features unrelated to media quality, asserting that he does not need to because Cisco has characterized media quality as "the fundamental factor in a [Webex] meetings user's experience." *See* Ex. 1 ("Maness Rep.") ¶ 89; Ex. 2 ("Maness Tr.") 174:11-176:7. But there is ***no evidence*** that media quality is the sole driver of demand for Webex and the fact that media quality is ***important*** does not relieve Dr. Maness of his obligation to ensure that his analysis "reflect[s] the value attributable to the infringing features of [Webex], and no more." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) (citation omitted).

If the Court does not exclude Dr. Maness's opinion in its entirety, it should strike from his report, and exclude testimony about, unaccused products. Dr. Maness speculates that products for which no expert has offered a reasoned infringement or apportionment opinion, like Cisco's Unified Communications Manager ("UCM") software and TelePresence hardware, would have benefitted from the asserted patents and sales of those products would have exerted upward

1

pressure on the amount of a reasonable royalty. Because neither Dr. Maness nor Dr. Cole has analyzed the benefits that UCM and TelePresence receive (if any) from the asserted patents, Dr. Maness's speculation about them should be struck from his report and he should be precluded from offering testimony about those products at trial.

## II. BACKGROUND

Video Solutions' damages expert, Dr. Robert Maness, opined on the reasonable royalty rates that Cisco and the former owners of the asserted patents would have agreed to at the hypothetical negotiation. *See* Maness Rep. ¶¶ 16-17. To reach his conclusions, Dr. Maness purported to "apportion relevant Webex sales to the portion of Cisco's revenues specifically attributable to the patented features, as apart from non-patented elements of Webex." *Id.* ¶ 14. Dr. Maness asserted in his report that a "feature-by-feature apportionment approach" was not necessary because, "as Webex is a videoconferencing platform, the proper apportionment approach is to identify the incremental value associated with its videoconferencing capabilities and then identify the incremental value of the accused videoconferencing functionality within Webex's videoconferencing capabilities." *Id.* ¶ 109. According to Dr. Maness, because Cisco has characterized media quality as "fundamental" to a user's experience in a Webex meeting, there was no need to assess the value of any features in Webex unrelated to media quality. *See id.* ¶ 89; Maness Tr. 175:24-176:7 (asserting that media quality is "that fundamental aspect that drives the usage of the product and then those other things are ancillary of that fundamental aspect").

Dr. Maness's apportionment analysis had three steps. First, Dr. Maness determined the percentage of Webex users that use Webex's "Meetings" product, as opposed to Webex Messaging or Webex Calling. Maness Rep. ¶¶ 83-85. He determined that "average relative share of [use of] Webex for meetings" was approximately ▮ *Id.* ¶ 84.

2

Second, Dr. Maness determined the percentage of Webex Meetings that include video. *Id.* ¶¶ 86-87. He calculated that approximately ▉ of Webex meetings included video over the damages period. *Id.* ¶ 86.

Finally, Dr. Maness multiplied the percentages he calculated in steps one and two with the percentages generated by Dr. Cole for the alleged technological benefits of each patent to determine the incremental benefits of each patent. *See id.* ¶¶ 94-106. Those percentages ranged from 4.5-6.4% for the '452 patent, 0.5-1.2% for the '823 patent, and 0.3-0.4% for the '099 patent. *Id.* ¶¶ 97, 101, 106.

### III.     LEGAL STANDARD

Under Fed. R. Evid. 702, expert testimony is permitted at trial only if the proponent of the expert's testimony demonstrates that: (1) it is based on "scientific, technical, or other specialized knowledge"; (2) the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue"; (3) it is "based on sufficient facts or data"; (4) it "is the product of reliable principles and methods"; and (5) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Trial judges must thus exercise a gatekeeping role to ensure that expert testimony is "not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). For a damages analysis, "[t]he essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product … [;] [i]n short, apportionment." *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("*CSIRO*") (citation omitted). "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *VirnetX, Inc. v. Cisco*

*Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).

### IV. ARGUMENT

#### A. Dr. Maness Has Failed To Apportion Damages To Just The Value Of The Allegedly Infringing Features.

The Court should exclude Dr. Maness's opinion because he offered an unapportioned damages estimate that fails to "reflect the value attributable to the infringing features of [Webex], and no more." *MLC Intell. Prop.,* 10 F.4th at 1373 (citation omitted). Apportionment is required in this case because Webex has "both patented and unpatented features that contribute to the value of the product." Maness Tr. 331:16-20. Apportionment is also required because the allegedly infringing features are not the sole driver of demand for Webex and thus the entire market value rule does not apply. *See LaserDynamics, Inc. v. Quanta Comput., Inc.,* 694 F.3d 51, 67 (Fed. Cir. 2012). Dr. Maness does not contest this. He admitted that "both patented and unpatented features … drive demand" for Webex. *See* Maness Tr. 331:21-24.

Dr. Maness made two fundamental errors in his attempt to apportion his damages analysis to the infringing features, thereby rendering his damages opinions unreliable.

**First**, his analysis relies on Dr. Cole's technological benefit analysis to "assign[] relative weights" to infringing and non-infringing features and "assign[] a percentage value to the infringing features." Maness Rep. ¶ 15. Because Dr. Cole's analysis is unreliable and not sufficiently tied to the facts of the case, as described in Cisco's Motion to Exclude/Strike Dr. Cole's testimony, Dr. Maness's opinion must be excluded as well. *See, e.g.*, *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1100 (N.D. Cal. 2022) ("[A]n expert whose proffered testimony relies on another expert's theories that have been or may be excluded as unreliable should also be excluded."); *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 405 (5th Cir. 2016) ("[T]he district court properly excluded [expert's] theory about fuel tank straps, because it relied

4

on [another expert's] inadmissible downward displacement theory.").

**Second**, Dr. Maness made no effort to assess or apportion out the value of non-infringing Webex features. Dr. Maness limited his analysis to Webex's "Meetings" product and to the percentage of meetings that included video. *Supra* § II. Dr. Cole, in turn, took a document listing "media quality" features of a specific Webex media service and assessed what percentage of the features listed related to each asserted patent. *See* Ex. 3 (Cole Rep.) ¶¶ 627-91. But neither Dr. Maness nor Dr. Cole attempted to assess the value of features unrelated to media quality in a Webex meeting. As just a few examples, Dr. Cole and Dr. Maness each admitted they did nothing to assess the value of non-infringing chat, encryption, Webex's AI assistant, polling, security, or transcription features available in Webex Meetings. *See* Ex. 4 (10/25/24 Cole Tr.) 16:6-19:15; Maness Tr. 174:11-177:25; Ex. 5 (Almeroth Rep.) ¶¶ 538-43 (describing Webex's chat, encryption, AI assistant, polling, security, and transcription features, among others). And Dr. Maness admits that non-infringing, non-videoconferencing features like polling, Webex's AI assistant, and other collaboration features are available to users in Webex meetings. Maness Tr. 182:15-19.

Dr. Maness's position is that apportionment between media quality features and other features is not needed because "video quality has been described as fundamental … So in that sense, without video quality, none of those other features matter." *Id.* at 182:25-183:8. Dr. Maness's assertion that he does not need to apportion out the value of features in Webex unrelated to media quality cannot be squared with his acknowledgment that "both patented and unpatented features … drive demand" for Webex and "contribute to the value of the product." *See id*. at 331:16-24. Moreover, there is ***no*** evidence in the record that media quality is the ***only*** driver of demand for Webex, even if one assumes that it is an important or "fundamental" set of features.

5

In fact, there is ample evidence that other aspects of Webex drive demand. Dr. Maness cites in his report internal Cisco survey results that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ And Cisco touts non-videoconferencing features in marketing presentations aimed at "technical decision makers" at prospective customers. *See, e.g.*, Ex. 8 (CISCO_00068226) at slides 12-14 (privacy and security features), 18-23 (enterprise policy management for Webex administrators), 30-33 (integration with Microsoft Teams and Slack), 51-54 (calendar integrations), 70 (Webex's AI assistant). Dr. Maness did not attempt to determine the relative value of audio and video quality and any of the foregoing features. Because Dr. Maness has not apportioned damages to reflect only the value of the infringing Webex features, his opinion should be excluded.

> **B.  Dr. Maness Should Not Be Permitted To Assert That Non-Webex Products Infringe The Asserted Claims Or Offer An Opinion That Non-Webex Sales Are Attributable To The Asserted Patents.**

Even if this Court does not exclude Dr. Maness's opinion in its entirety, it should preclude him from testifying as to products for which no expert has offered any infringement or apportionment analysis. In paragraph 158 of his report, Dr. Maness opines that sales of non-Webex products put upward pressure on the amount of a reasonable royalty under *Georgia-Pacific* Factor 6:

> I explain in § VI that Cisco sells other products, especially its UCM products, that integrate with Webex, at least some sales of which could likely be attributed to the '452, '823, and/or '099 patents. Moreover, Cisco has earned significant profits from the sale of UCM and other products like Telepresence which, beyond having integrations with Webex, may also have features that infringe the '452 and/or '823 patents. As I have not been asked to analyze these products, my calculation of Cisco's profits attributable to its alleged infringement of the '452 and/or '823 patents likely understates

6

> Cisco's actual gains. Full consideration of these additional products would likely significantly increase Cisco's maximum willingness to pay for the '452 and/or '823 patents. This analysis is consistent with *Georgia-Pacific* Factor 6.

Maness Rep. ¶ 158.  In paragraphs 147 and 148, Dr. Maness summarizes evidence regarding Cisco's UCM revenue and asserts that "the size of this business would inform Cisco's position in the hypothetical negotiation involving Webex's accused videoconferencing functionality as I understand that it is interoperable with UCM."  In paragraphs 169 and 171, Dr. Maness asserts—without providing any evidence—that UCM sales would have benefited from the patented technology.  Paragraphs 147-48 and 158 and the portions of paragraphs 169 and 171 that refer to UCM should be struck, and Dr. Maness should be precluded from offering opinions regarding the effect of non-Webex products on his analysis at trial, for two reasons.

**First**, no expert has opined that any non-Webex product infringes the asserted claims.  Dr. Maness cites no sources for his assertion that Cisco's Unified Communications Manager (UCM) software and TelePresence products "may also have features that infringe the '452 and/or '823 patents."  *Id.* ¶ 158.  Video Solutions' infringement expert, Dr. Cole, has not asserted that UCM infringes and the single sentence in his report asserting that TelePresence products infringe is not sufficient to meet Video Solutions' burden and should be struck, for all the reasons explained in Cisco's co-pending Motion to Exclude/Strike Dr. Cole's Opinions.  Dr. Maness should not be permitted to represent to the jury at trial that UCM or TelePresence infringes any asserted claim.  Cisco's counsel met and conferred with Video Solutions' counsel regarding this motion, and they confirmed they will not offer testimony from Dr. Maness suggesting that TelePresence or UCM infringe any asserted claim.  *See* Ex. 9.  Cisco thus understands this portion of its motion to be unopposed.

**Second**, Dr. Maness's assertions about the benefits of the asserted patents to Cisco's UCM

7

sales are based purely on speculation and are inadmissible. *See id.* ¶¶ 147-48 (discussing UCM sales), 158 ("Cisco sells other products, especially its UCM products, that integrate with Webex, at least some sales of which could likely be attributed to the '452, '823, and/or '099 patents."), 169 (referencing the "significant benefits that [the hypothetical] license would provide to other Cisco products (such as UCM)"), 171 ("Cisco's sales of UCM products and sales of Webex internationally have likely both increased as a result of Cisco's use of the patented technology."). Dr. Maness's sole basis for speculating that the asserted patents may have contributed to Cisco's UCM sales is that Webex "is interoperable with UCM." *Id.* ¶ 148. But Dr. Maness conducted no analysis of consumer demand for UCM in his report, nor did he consider and analyze evidence regarding usage of Webex by UCM customers. Cisco produced evidence showing that, for one variation of its UCM software, only approximately ▊ of customer calls from November 2021 to August 2024 were video calls. *See* Ex. 7 (CISCO_00262762). Given that the evidence indicates that less than ▊ of UCM customers use UCM to engage in video calls, it is hard to imagine that interoperability with Webex itself drives UCM sales, let alone that the accused Webex features are responsible for those sales. Because Dr. Maness did not analyze the effect that the asserted patents had (if any) on the sales of any non-Webex product, his speculation about the impact of the patents on UCM sales is unreliable and must be excluded. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) ("The [*Daubert*] reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief.'" (citation omitted)).

## V. CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court (1) exclude Dr. Maness's opinion in full; or (2) strike paragraphs 147-48 and 158, and the portions of paragraphs

8

169 and 171 that refer to UCM from Dr. Maness's report, and preclude Dr. Maness from discussing the alleged benefits of the asserted patents to non-Webex products at trial.

| | |
|---|---|
| Dated:  November 4, 2024 | Respectfully submitted,<br><br>*/s/ Melissa R. Smith*<br>Melissa R. Smith (TX Bar No. 24001351)<br>Tom Gorham (TX Bar No. 24012715)<br>**GILLAM & SMITH LLP**<br>303 South Washington Avenue<br>Marshall, Texas 75670<br>Tel:  (903) 934-8450<br>Fax:  (903) 934-9257<br>melissa@gillamsmithlaw.com<br>tom@gillamsmithlaw.com<br><br>Jared Bobrow (CA State Bar No. 133712)<br>Jason Lang (CA State Bar No. 255642)<br>Diana Rutowski (CA State Bar No. 233878)<br>Parth Sagdeo (CA State Bar No. 325269)<br>Jingyuan Luo (CA State Bar No. 313149)<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>1000 Marsh Road<br>Menlo Park, CA  94025-1015<br>Tel: (650) 614-7400<br>Fax: (650) 614-7401<br>jbobrow@orrick.com<br>jlang@orrick.com<br>drutowski@orrick.com<br>psagdeo@orrick.com<br>jluo@orrick.com<br><br>Sarah K. Mullins (CA State Bar No. 324558)<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>405 Howard Street<br>San Francisco, CA 94105<br>Tel:  (415)  773-4572<br>Fax:  (631) 790-4932<br>sarahmullins@orrick.com<br><br>Ernie Fok (CA State Bar No. 341927)<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>631 Wilshire Boulevard, Suite 2C<br>Santa Monica, California 90401<br>Tel: (310) 633-2825<br>Fax: (310) 633-3849<br>efok@orrick.com<br><br>*Attorneys for Defendant Cisco Systems, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 4, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (and any attachments) via email.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

On November 4, 2024, lead and local counsel for Cisco and for Video Solutions met and conferred pursuant to Local Rule CV-7(h) via a remote conference.  Video Solutions' counsel agreed, following that conference, "that neither Dr. Cole nor Dr. Maness will present testimony that Telepresence, UCM, and Cisco videoconferencing products other than Webex infringe the Asserted Patents." *See* Ex. 24.  Cisco thus understands its motion to strike portions of paragraph 158 in Dr. Maness's report regarding TelePresence's and UCM's alleged infringement of the asserted claims (and to exclude related testimony) to be unopposed.  Aside from that agreement, the Parties have been unable to resolve the disputes herein and are at an impasse.  As such, this Motion is opposed.

*/s/ Melissa R. Smith*
Melissa R. Smith
